UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:17-cv-00024-FDW-DSC

| | |
|---|---|
| LENA WATTS-ROBINSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>M. DAVID BRITTAIN, Catawba County )<br>Board of Education Chairman. )<br>)<br>Defendant. )<br>)<br>_____ ) | ORDER |

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 26). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court issued an order on October 23, 2018 advising pro se Plaintiff of her burden in responding to the motion for summary judgment. (Doc. No. 29). Plaintiff responded to the motion, (Doc. No. 34), Defendant replied, (Doc. No. 35), Plaintiff filed a surreply, (Doc. No. 36), and both sides presented argument at a hearing on December 12, 2018.[1] This matter is now ripe for review. For the reasons stated below, Defendant's Motion for Summary Judgment is GRANTED.

## I. Background

Plaintiff Lena Watts-Robinson brought this employment discrimination lawsuit against Catawba County Schools. In May 2016, Plaintiff was scheduled to substitute at Maiden Elementary School on five separate days: May 9, May 16, May 23, May 27, and May 31. (Doc.

---

[1] Plaintiff filed a surreply, (Doc. No. 36), without seeking leave of the Court pursuant to Local Rule 7.1(e). Nonetheless, because of Plaintiff's pro se status, the Court hereby grants leave to Plaintiff and accepts Plaintiff's surreply for consideration.

1

No. 26-2, p. 5, p. 55). On either the afternoon of May 9 or May 16,[2] Plaintiff spoke to Principal Reed, the principal of the school, in her office. Id. at 6. In this conversation, Plaintiff expressed her concerns that one of the students in her class, M., was not learning and being disruptive. Id. at 6–7. At some point the discussion turned to informing M.'s parents of his academic and behavioral problems, and Principal Reed told Plaintiff that M.'s mother had expressed a desire to not be contacted by the school about these issues. Id. at 9. Plaintiff then suggested that the school should call M.'s parents frequently, at work, every fifteen minutes if necessary. Id. at 12. Plaintiff stated at her deposition that the reason she made this suggestion was because she felt that the parents would not respond to calls on their personal phone lines, but the parents would be socially pressured to respond to calls on their business line. See id. at 15–16.

After this conversation, Plaintiff returned to substitute teach on May 23. Id. at 27. On this date, two African-American students came to talk to Plaintiff. Id. at 29. These two students reported to Plaintiff that they felt mistreated by another teacher, Ms. Long. Id. at 30–31. According to the two students, Ms. Long often punished them in class, but did not punish white students for similar behavior. Id. at 31. Plaintiff promised the students that she would convey the issue to others. Id. at 32.

On the afternoon of May 23, Plaintiff had a conversation with another teacher, Mr. Goodson. Id. at 35. According to Plaintiff, she relayed the African-American student concerns regarding discrimination, and she and Mr. Goodson had a disagreement over the issue. (Doc. No. 34-1, p. 8). Based on Plaintiff's version of this conversation, Mr. Goodson denied that the students were being discriminated against and blamed the students for causing a lot of problems in the

---

[2] While the parties dispute the precise date of this conversation, the date is immaterial.

classroom. Id. At some point in the conversation, M. was once again brought up and Plaintiff repeated her previous suggestion to call M.'s parents every fifteen minutes if necessary. Id.

After this conversation, Mr. Goodson was reportedly upset and went to speak with Principal Reed. (Doc. No. 26-6, p. 2). On the morning of May 24, 2016, Plaintiff received a call from the secretary at Maiden Elementary School informing her that she was no longer scheduled to substitute for Mr. Goodson on May 27 and May 31. (Doc. No. 34-1, p. 9). Later that day, Principal Reed informed Plaintiff that "Mr. Goodson was very offended yesterday by the way that he was spoken to" and that the school felt that Plaintiff was not "a good match with that group of students." Id. at 24. The parties dispute whether Plaintiff was offered other substitute positions at other schools in the Catawba School District after May 31, 2016.

Plaintiff later filed a charge with the EEOC and was issued a right to sue letter on November 3, 2016. Plaintiff subsequently brought the present lawsuit alleging race discrimination and retaliation in violation of state and federal laws. Defendant now moves for summary judgment on all of Plaintiff's claims.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact in the case. Fed. R. Civ. P. 56(a). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden shifts and the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (quoting Fed.R.Civ.P. 56(e)).

Simply "rest[ing] upon the mere allegations or denials of [a plaintiff's] pleadings" is insufficient to survive a properly made and supported motion for summary judgment. Id. at 586 n.11. Instead, the non-moving party must adduce affirmative evidence, by means of affidavits or other verified evidence, showing that a genuine dispute of material fact exists. See id. at 586–87. "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Dash v. Mayweather, 731 F.3d 303, 311 (4th Cir. 2013).

## III. Analysis

The Court first notes that Plaintiff's briefing is largely devoid of legal framework, thus, it is difficult for the Court to determine which legal claims Plaintiff is actually pursuing. Plaintiff stated, at oral argument, that she was pursuing two claims: a race discrimination and a retaliation claim, though it was still unclear which statutes Plaintiff was invoking to make those claims. Out of an abundance of caution, and based on the briefings, complaint, and arguments, the Court construes Plaintiff's case to include the following claims: 1) retaliation claims under Title VII and 42 U.S.C. § 1981, 2) race discrimination claims under Title VII and 42 U.S.C. § 1981, and 3) a state law claim for retaliation and race discrimination under the North Carolina Equal Employment Practices Act. The Court will consider each of these claims in turn.

A. *Plaintiff's Federal Retaliation Claims*

Plaintiff claims that she was retaliated against for reporting race discrimination on behalf of the two students that she spoke to on May 23, 2016. However, since the students were not individuals protected by Title VII or §1981, Plaintiff's retaliation claims fail as a matter of law.

4

Title VII forbids an employer from discriminating against a person who opposes a "practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3 (2018). This antiretaliation provision's primary purpose is prevent employers "from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006).

The Fourth Circuit has made it clear that Title VII's antiretaliation provision is "not a general bad acts statute," and thus, does not apply to claims of discrimination that are not related to employment. Crowley v. Prince George's Cty., Md., 890 F.2d 683, 687 (4th Cir. 1989). In Crowley, the plaintiff claimed that he had been demoted for "drawing attention to racial harassment by the police department." Id. at 685. However, since the plaintiff was not investigating "discriminatory employment practices within the police department," but rather investigating instances of racial harassment toward the community at large, the Fourth Circuit found that the "claim simply is not cognizable under Title VII." Id. at 687.

Here, Plaintiff cannot establish a claim for retaliation under Title VII because she was not reporting any discrimination relating to an employment practice. According to Plaintiff's own affidavit, she informed Mr. Goodson on May 23 "that two of his African-American students told [her] that Ms. Long punished them for doing the same things that their white classmates do . . ." (Doc. No. 34-1, p. 8). However, students are not employees and thus, any claims of discrimination towards them do not fall within the purview of Title VII. Plaintiff's subsequent reports of discrimination towards the students are therefore not protected by the antiretaliation provisions of Title VII. See 42 U.S.C. § 2000e-3 (making it unlawful to discriminate for practices "made an

5

unlawful employment practice by this subchapter"); Crowley, 890 F.2d at 687. Because Plaintiff has offered no evidence that she reported any *employment-related* discrimination prior to her alleged termination, summary judgment is appropriate on Plaintiff's Title VII retaliation claim.

To the extent that Plaintiff is making a separate §1981 retaliation claim, summary judgment is also appropriate. While 42 U.S.C. §1981 allows a "complaint of retaliation against a person who has complained about violation of another person's contract-related right," CBOCS West, Inc. v. Humphries, 553 U.S. 442, 445 (2008), Plaintiff has made no showing that the students were in any sort of contractual relationship with the school that would be protected by §1981. Allowing a §1981 retaliation claim for any sort of reported discrimination in the absence of a contract would effectively turn §1981 into a "general bad acts statute." Cf. Crowley, 890 F.2d at 687.

For the reasons stated above, Defendant's motion for summary judgment is granted as to Plaintiff's retaliation claims under Title VII and §1981.

*B. Plaintiff's Federal Race Discrimination Claims*

Plaintiff also brings race discrimination claims under Title VII and §1981. (Doc. No. 1, pp. 12–13). When bringing a claim for race discrimination, plaintiffs are left with the discretion to pursue two avenues of proof: either the "mixed-motive" or the "pretext" framework. Foster v. Univ. of Md.-Eastern Shore, 787 F.3d 243, 249 (4th Cir. 2015). Plaintiff stated at oral argument that she was solely relying on the McDonnell Douglas pretext framework and that she believed that race was the only reason for her termination.

Under the McDonnell Douglas pretext framework, a plaintiff can show a prima facie case of race discrimination by showing that 1) they are a member of a protected class, 2) they suffered an adverse employment action, 3) they were performing their job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and 4) the

6

position remained open or was filled by similarly qualified applicants outside of the protected class. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007); see also Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 257 (4th Cir. 2001) (applying the McDonnell Douglas burden shifting framework for §1981 claims). Once a plaintiff has presented a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Holland, 487 at 214 (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004)). If the employer meets its burden of production regarding a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to show that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citing Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1987)).

Once the employer has offered a non-discriminatory explanation, a plaintiff must provide "sufficient evidence of pretext" to survive summary judgment. Hux v. City of Newport News, Va., 451 F.3d 311, 315 (4th Cir. 2006). A "plaintiff cannot seek to expose [the] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." Id. "Mere conjecture and speculation . . . [is] insufficient to overcome a summary judgment motion." Propst v. HWS Co., Inc., 148 F. Supp. 3d 506, 527 (W.D.N.C. 2015).

A. Plaintiff's Failure to Establish a Prima Facie Case

Here, Plaintiff has failed to meet her burden of production regarding the third prong in the prima facie case: that she was performing her job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action. This element "requires the

7

court to focus on the employer's perceptions, not the perceptions of the employee." Jones v. Dole Food Co., Inc., 827 F. Supp. 2d 532, 547 (W.D.N.C. 2011). While the burden of establishing a prima facie case is not onerous, "it is also not empty or perfunctory." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 59 (4th Cir. 1995).

To support this element of her claim, Plaintiff points to a statement made by Principal Reed in a taped phone call after Plaintiff's substitute shifts were canceled. Plaintiff argues that Principal Reed's statement, "You've come in our building and you've done a great job and we appreciate having you," is evidence that she met the employer's expectations. (Doc. No. 34, p. 15). However, this statement is severely taken out of context. According to Plaintiff's own submitted evidence, the full conversation from the taped recording reads:

> PRINCIPAL REED: Well, right now, to be honest with you, I – I just don't think that, uh, it's the best match for you and that group of students that you – that you've been working with. Um, and also yesterday, I think Mr. Goodson was very offended by the way that you approached him and the things that you said. Um, and you know, you've – you've come in our building and you've done a great job and we appreciate having you. But when you're here one day a week and we've been with these students for three or four years, sometimes you don't see everything that's happened and all the things that we've done to work with these students. And to come in and tell us that we're not doing it the right way . . . I just don't think that is really sitting well with some folks in the building.

(Doc. No. 34-1, p. 23). No reasonable juror could view the conversation as a whole and find that the one sentence, taken out of context, showed that Plaintiff was meeting the legitimate expectations of the employer. Outside of this one sentence and her own descriptions of her performance and capabilities, Plaintiff has no tangible evidence to show that she was meeting the employer's legitimate expectations. Plaintiff has not pointed the Court to any affidavits, performance reports, or deposition testimony from other sources that suggests that she was adequately performing her job and acting in a professional manner.

8

B. Plaintiff's Lack of Evidence for Pretext

Even assuming, *in arguendo*, that Plaintiff can meet her prima facie case, Defendant has offered a legitimate, nondiscriminatory reason for removing Plaintiff from the May 27 and May 31 assignments. As stated in a recorded phone call, Plaintiff was removed from the substitute assignment list because she had made inappropriate suggestions towards managing student behavior and because she had offended Mr. Goodson during their afternoon conversation on May 23. (Doc. No. 34-1, p. 23–24). Defendant has presented affidavits from Mr. Goodson and Mr. Trivette which state that during the May 23 conversation with Mr. Goodson, Plaintiff was "confrontational and abusive," (Doc. No. 26-7, p. 2), she spoke in a "loud voice," (Doc. No. 26-9, p. 2), and repeatedly interrupted and spoke over Mr. Goodson. (Doc. No. 26-7, p. 2; Doc. No. 26-9, p. 2). In addition, Defendant has submitted Plaintiff's own testimony that Plaintiff made her suggestions to call a student's parents every fifteen minutes at work without knowing of previous interventions the school had tried, the student's special needs or IEP, previous interactions with the student's family, the student's living situation, or where/if the student's parents were even employed. (Doc. No. 26-2, p. 19–20). Because Defendant has brought forth evidence for a legitimate, nondiscriminatory reason, Plaintiff must bring sufficient evidence showing that the employer's reason is mere pretext for discrimination to survive summary judgment. See Hux, 451 F.3d at 315.

Plaintiff has largely focused her pretext arguments towards the fact that she did not act in an unprofessional manner towards either Principal Reed or Mr. Goodson in her respective conversations with them. (Doc. No. 34, p. 8). For example, Plaintiff argues that since Mr. Goodson admits that she "initiated, and ended, her contact with [Mr. Goodson] by saying 'excuse me'", her intervening conduct was not unprofessional. (Doc. No. 34, p. 12). However, regardless of

Plaintiff's own perception of her conversation with Mr. Goodson, it is uncontroverted fact that Mr. Goodson felt offended and reported his feelings to Principal Reed. Principal Reed, acting upon Mr. Goodson's report, removed Plaintiff from her substitute assignments. Based on these facts, there is no triable issue of material fact regarding pretext.

These facts are analogous to the facts in Holland v. Wash. Homes, Inc. 487 F.3d 208 (4th Cir. 2007). In that case, the plaintiff, Holland, allegedly made threats about another employee, Peck. Id. at 212. These alleged threats were communicated to the president of the company, who ultimately fired plaintiff. Id. The Fourth Circuit held that, "the uncontested evidence established that . . . the decisionmaker[] honestly believed that Holland deserved to be discharged for threatening Peck, regardless of whether Holland did in fact issue the threats." Id. at 217. In the present case, regardless of whether Plaintiff was actually confrontational, it is undisputed that Mr. Goodson perceived the interaction as "confrontational and abusive" and reported it as such to Principal Reed. (Doc. No. 26-7, p. 2–3). Principal Reed, acting upon this report, cancelled Plaintiff's upcoming substitute assignments for Mr. Goodson's classroom. (See Doc. No. 34-1, p. 23–24). Plaintiff has not offered any evidence suggesting that Principal Reed did not honestly believe Mr. Goodson's version of events.

Plaintiff attempts to point to shifts in the employer's stated reasons for removing her assignments as evidence of pretext. (See Doc. No. 34, p. 18 ("Reasonable minds could infer that changed, modified and or expanded reasons, over a period of two years, could be a pretext for discrimination.")). The problem with this argument is that, outside of minor changes in wording and phrasing, the reasons given by the employer have largely been consistent. For example: on May 24, 2016, Plaintiff was told that Mr. Goodson was offended by the previous conversation and that since Plaintiff was only at the school one day a week, it was inappropriate for her to make

10

certain suggestions for students without knowing all of the facts. (See Doc. No. 34-1, p. 23). Plaintiff received a letter on October 7, 2016 after an internal investigation of her complaint which stated that she was removed because she "continued to voice [her] disagreement with how the African America[n] students were addressed and continued to recklessly make judgments that there was discrimination going on with regards to addressing behavior without having full knowledge of the situation." Id. at 36. Even though Plaintiff tries to point to the wording of these messages as different, the substance of the reasoning in all of these conversations is the same: Plaintiff was removed from her assignments because she had made inappropriate suggestions to handle student behavior and because she had a conversation with Mr. Goodson that he found offensive. Plaintiff cannot show that an employer's rationale was pretext simply by "focusing on minor discrepancies that do not cast doubt on the explanation's validity." See Hux, 451 F.3d at 315.

Plaintiff also argues that the employer's reasoning was flawed because Principal Reed did not speak to her about the conversation with Mr. Goodson or conduct any investigation before removing her from the assignments. (See Doc. No. 34, p. 12 ("[Principal Reed] simply accepted Mr. Goodson's version of the event.")). Even if true, this fact does not show that the employer's reason was pretext for discrimination. Title VII does not grant employees a federal cause of action to review every adverse employment decision. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) ("[W]hen an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimate, so long as it truly was the reason for the plaintiff's termination."); see also Propst v. HWS Co., Inc., 148 F. Supp. 3d 506, 523 (W.D.N.C. 2015) (stating that discrimination laws do not create a federal right to only be fired for "just cause"). While Plaintiff has argued fervently that

the school was wrong to cancel her two substitute assignments, without more, she cannot make it to a jury on a claim of race discrimination.

The only evidence that Plaintiff uses to support her argument that race discrimination was the true reason for her removal is Principal Reed's statement that Plaintiff was not the "best match" for the students. (Doc. No. 34-1, p. 23). According to Plaintiff, "[a]lthough 'best match' could be defined in many ways, race is not excluded. Therefore, it is not unreasonable to infer that 'best match' could have referred to Watts-Robinson's race." (Doc. No. 34, p. 17). Plaintiff's own interpretation of the phrase "best match" is insufficient to raise a triable issue on race discrimination. In the same conversation, Principal Reed gave the reasons for cancelling Plaintiff's substitute assignments: that she had been unprofessional with school staff and that her suggestions for handling students were inappropriate. (See Doc. No. 34-1, p. 23). Plaintiff cannot take isolated words and phrases out of context and apply her own conclusory interpretations to those phrases to create a triable issue of fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 249–50 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

Plaintiff's overall approach of using out-of-context phrases to build her case is simply not enough to meet her burden of production at summary judgment. See Matsushita, 475 U.S. at 586–87; Dash, 731 F.3d at 311 ("[T]he nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."). For this, and for the reasons stated above, the Court hereby grants summary judgment in favor of Defendant regarding Plaintiff's race discrimination claims.

*C. Plaintiff's State Law Claims*

Plaintiff's complaint references "North Carolina statute section 1367" as a basis for her "state protected rights." This statute does not appear to exist. Outside of this stray reference in the complaint, Plaintiff has not laid out, in briefing or argument, the statutory basis for any state law rights or claims. To the extent that Plaintiff is asserting a claim under the North Carolina Equal Employment Practices Act (NCEEPA), summary judgment is appropriate for this claim under state law.

> NCEEPA provides that:
>
> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2. "Neither the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under . . . NCEEPA. Instead, most courts have applied the NCEEPA only to common law wrongful discharge claims or in connection with other specific statutory remedies." Smith v. First Union Nat. Bank, 202 F.3d 234, 247 (4th Cir. 2000). Both state and federal courts have repeatedly found NCEEPA does not grant a private cause of action claims involving "retaliation, hostile work environment, disparate treatment or constructive discharge in violation of public policy." Jones v. Duke Energy Corp., 43 Fed. App'x 599, 600 (4th Cir. 2002) (per curiam); see also Moore v. Time Warner Cable, Inc., 3:09-cv-3, 2009 WL 3754225, at *4 (W.D.N.C. Nov. 5, 2009) (collecting cases).

Thus, because Plaintiff cannot sustain her claims under federal statute, NCEEPA does not give plaintiff any additional statutory remedy. To the extent that Plaintiff is asserting a state law NCEEPA claim, summary judgment is appropriate in favor of Defendants.

13

## IV. Conclusion

IT IS, THEREFORE, ORDERED that Defendant's Motion for Summary Judgment, (Doc. No. 26), is GRANTED as to all of Plaintiff's claims. The Clerk of Court is respectfully directed to close the case and serve a copy of this Order to pro se Plaintiff's address of record.

IT IS SO ORDERED.

Signed: January 4, 2019

Frank D. Whitney
Chief United States District Judge